**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BOKHYUN YOO, on behalf of herself and those similarly situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>WENDY'S INTERNATIONAL, INC.,<br><br>　　　　　Defendant. | 2:07-cv-04515-FMC-JCx<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

This matter is before the Court on Defendant Wendy's International, Inc.'s Motion to Dismiss(docket no. 21), filed October 26, 2007. The Court has read and considered the moving, opposition, and reply documents submitted in connection with the motion. The Court deems the matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for December 10, 2007, is removed from the Court's calendar. For the reasons and in the manner set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

//
//

# I. BACKGROUND

Defendant Wendy's International, Inc. ("Wendy's") operates and franchises restaurants. (FAC ¶ 8.) With more than 6,300 restaurants in the United States and Canada, Wendy's sales reached $2.4 billion in 2005. (*Id.*) Wendy's has distinguished itself from its fast food competitors by emphasizing healthier, fresher foods. (*Id.* ¶ 12.)

In 2006, Wendy's embarked on a nationwide marketing campaign touting its decision to cut unhealthful trans fatty acids ("trans fats") from its menu offerings by using corn and soy oils instead. (*Id.* ¶¶ 14-16.) Trans fats increase levels of artery-clogging low-density lipoprotein in the blood, while reducing levels of healthy high-density lipoprotein. (*Id.* ¶ 9.) Trans fats are linked to a host of health problems, including heart disease. (*Id.*) Several studies have concluded that people should consume as little trans fat as possible. (*Id.* ¶11.)

On June 8, 2006, Wendy's issued a press release announcing that all its breaded chicken products would have zero grams of trans fats, and its french fries would have no more than .5 gram of trans fat. (*Id.* ¶ 14.) Wendy's restaurants would make the switch from cooking with oils high in trans fat to corn and soy oil beginning in August 2006. (*Id.*) Wendy's changed its packaging, so that its bags read: "Do What Tastes Right. Wendy's cooking oil has 0 g trans fat." (*Id.* ¶ 15.) In addition, Wendy's posted nutritional displays in its restaurants stating that its chicken products contained zero grams of trans fat and its french fries no more than .5 gram of trans fat. (*Id.* ¶ 16.)

In November 2006, a *Consumer Reports* article revealed that Wendy's menu offerings contained more trans fats than advertised. (*Id.* ¶ 17.) Independent laboratory testing of food items from three different New York Wendy's restaurants showed that the average amount of trans fat per serving of Wendy's french fries was 2.5 grams. (*Id.*) The Center for Science in the Public Interest

conducted a similar study of Wendy's restaurants in New York in July 2007 and found an average of 3.7 grams of trans fat per serving of Wendy's french fries. (*Id.* at 19.)

Plaintiff Bokhyun Yoo ("Yoo") purchased Wendy's fries, sometime after June 2006, that contained higher levels of trans fat than Wendy's had advertised. (*Id.* ¶ 7.) Plaintiff's counsel had a sample of Wendy's french fries tested by an independent laboratory, which found 1.3 grams of trans fat per small serving. (*Id.* ¶ 18.) It is not clear from the facts alleged if Plaintiff's counsel tested fries from the same batch, or even the same restaurant, as those consumed by Plaintiff.

On October 12, 2007, Yoo filed a first amended complaint in a putative class action[1] against Wendy's, alleging: (1) unfair, unlawful, and fraudulent trade practices in violation of California Business and Professions Code §17200 *et seq.*; violation of the Consumers Legal Remedies Act, California Civil Code §1750 *et seq.*; (3) fraud, deceit, and/or misrepresentation; (4) breach of an implied-in-fact contract; (5) unjust enrichment; and (6) strict product liability. Defendant now moves to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), and for failure to plead fraud with particularity under Rule (9)(b).

## II. STANDARD OF LAW

A. Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court will not dismiss claims for relief unless the plaintiff cannot prove any set of facts in support of the claims that

---

[1]The proposed class includes all individual who purchased Wendy's fried food in California between June 2006 and the present. FAC ¶¶ 1, 21.

1  would entitle her to relief. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002);
2  *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998). All
3  material factual allegations in the complaint are assumed to be true and construed
4  in the light most favorable to the plaintiff. *Nursing Home Pension Fund, Local
5  144 v. Oracle Corp.,* 380 F.3d 1226, 1229 (9th Cir. 2004) (citing *Burgert v.
6  Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).
7  However, the Court "is not required to accept legal conclusions cast in the form
8  of factual allegations if those conclusions cannot be reasonably drawn from the
9  facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir.
10 1994) (internal citations omitted).
11      If the Court dismisses the complaint, it must decide whether to grant leave
12 to amend. Denial of leave to amend is "improper unless it is clear that the
13 complaint could not be saved by any amendment." *Livid Holdings Ltd. v.
14 Salomon Smith Barney, Inc.*, 403 F.3d 1050, 1055 (9th Cir. 2005).
15 B.  Rule 9(b)
16      "Rule 9(b) demands that, when averments of fraud are made, the
17 circumstances constituting the alleged fraud 'be specific enough to give
18 defendants notice of the particular misconduct . . . so that they can defend against
19 the charge and not just deny that they have done anything wrong.'" *Vess v.
20 Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Bly-Magee
21 v. California,* 236 F.3d 1014, 1019 (9th Cir. 2001)) (additional quotations
22 omitted).  To meet this standard, the complaint must set forth such facts as "the
23 times, dates, places, benefits received, and other details of the alleged fraudulent
24 activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see also
25 Edwards v. Marin Park, Inc*., 356 F.3d 1058, 1066 (9th Cir. 2004) ("To avoid
26 dismissal for inadequacy under Rule 9(b), [the] complaint would need to state the
27 time, place, and specific content of the false representations as well as the
28 identities of the parties to the misrepresentation.") (internal quotations omitted).

4

"A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Vess,* 317 F.3d at 1107. Accordingly, leave to amend should be granted "unless it is clear that the complaint could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 403 F.3d 1050, 1055 (9th Cir. 2005); *see also Vess,* 317 F.3d at 1108 ("As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice.").

### III. DISCUSSION

A. Evidence Outside the Complaint

As a preliminary matter, the Court must determine whether it may, on a 12(b)(6) motion to dismiss, consider exhibits submitted by Defendant. The general rule on a motion to dismiss is that the court may not consider facts not alleged in, or exhibits not attached to, the complaint. *Knieval v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). If, however, the complaint incorporates by reference the extrinsic facts or exhibits, the court may examine these materials so long as no party questions their authenticity. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1988); *Knieval*, 393 F.3d at 1076.

Here, Plaintiff Yoo makes several detailed allegations based on documents not attached to her first amended complaint. Defendant attaches each of these as exhibits to its motion to dismiss. First, Plaintiff alleges that Wendy's trades on its reputation for providing healthier foods to charge its customers "a premium" over other fast food restaurants. FAC ¶ 13. This allegation is based on a 2002 article published in *Forbes*. *Id.*; Def.'s Ex. 3. Second, Plaintiff alleges that Defendant's restaurants display nutritional posters, which falsely state that Wendy's french fries contain 0.5 gram of trans fat and its fried chicken items contain 0 grams of trans fat. FAC ¶ 16; Def.'s Ex. 1. Third, Plaintiff alleges Wendy's knew about its

5

misrepresentations no later than November 2006, when Consumer Reports published an article citing Wendy's high trans fat content. *See* FAC ¶ 17, Def.'s Ex. 2. Fourth, and finally, Plaintiff alleges that testing by the Center for Science in the Public Interest corroborates the *Consumer Reports* finding and the findings of the independent laboratory hired by Plaintiff. *See* FAC ¶ 19-20; Def.'s Ex. 4.

Plaintiff has quoted from and relied extensively on these documents in her FAC. Plaintiff has not objected to the authenticity of these documents. The Court finds that the FAC incorporates these exhibits by reference. Accordingly, the Court may properly consider them.

B. First Cause of Action: Unfair Trade Practices, Cal. Bus. & Prof. Code §17200

1. Standing

Wendy's first argues that Yoo lacks standing to bring a claim under California's unfair competition law ("UCL"), California Business & Professions Code §17200 *et seq*. The Court disagrees. To have standing under the UCL, a plaintiff must demonstrate that she suffered an injury in fact and lost money or property as a result of the defendant's conduct in violation of the UCL. Here, Plaintiff's injury in fact is that she purchased and consumed Wendy's fried food, which she would not have done if she had known the actual level of trans fat it contained. FAC ¶¶ 7, 36.

Defendant argues that Plaintiff has failed to demonstrate that she lost property or money as a result of Wendy's conduct because she does not allege that she purchased Wendy's food "as a result of" the alleged misrepresentations. Plaintiff alleges that Wendy's misleading advertising injured her because she purchased Wendy's food that she otherwise would have avoided, and she paid a premium for it. FAC ¶ 32. This is sufficient to plead a cause of action under the UCL.

2. Reliance

Defendant next argues that Plaintiff's claim must fail because she failed to allege that she actually read and relied upon Wendy's misleading advertisements or

nutritional posters. Mot. at 7-8. Plaintiff can recover only if she suffered injury "as a result of" Defendant's conduct. CAL. BUS. & PROF. CODE §17204. Plaintiff argues that California law does not require the pleading of reliance, and even if it did, Plaintiff's FAC has adequately done so. Opp'n at 7-8. Both parties acknowledge that the state of California law on this point is unsettled. The California Supreme Court has granted review in two cases that may settle this question, but it has yet to rule. *See In Re Tobacco II Cases*, 51 Cal. Rptr. 3d 707 (2006); *Pfizer, Inc. v. Superior Court (Galfano)*, 51 Cal. Rptr. 3d 707 (2006). The Court finds that it need not resolve this question because Plaintiff has adequately pleaded reliance.

Here, Plaintiff has alleged that absent Wendy's representations that its fried food was free of trans fat or very nearly so, she would neither have purchased nor consumed Wendy's food. FAC ¶¶ 7, 36. In *Lacher v. Superior Court (Southwest Diversified, Inc.)*, the court explained, "A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment. Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did." 230 Cal. App. 3d 1038, 1049 (1991) (quoting *Okun v. Morton*, 203 Cal. App. 3d 805, 828 (1988)). Plaintiff Yoo's allegations, though somewhat sparse, allege that but for Defendant's representations of the trans fat content of its food, Plaintiff would not have purchased them. This is sufficient to plead reliance.

### 3. "Likely to be deceived" Standard

Section 17200 prohibits acts of unfair competition, including "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." As the statutory law is disjunctive, its "language establishes three varieties of unfair competition:" the *unlawful* prong, the *unfair* prong, and the *fraud* prong. *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002). Most relevant here is the fraud prong.[2] The fraud prong

---

[2]The first prong, the unlawful prong, "borrows violations of other laws and treats these

"bears little resemblance to common law fraud or deception." Rather, "the test is whether the public is likely to be deceived. This means that a section 17200 violation, unlike common law fraud, can be shown even if no one was actually deceived, relied on the fraudulent practice, or sustained any damage." *Id.* at 516-17 (citations omitted).

Wendy's argues that Yoo has failed to state a claim because Wendy's representations were not "likely to deceive" a reasonable consumer. *See Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (holding that representations are actionable only where "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.") The Court finds that, accepting the facts alleged in Plaintiff's FAC as true and construing them in the light most favorable to Plaintiff, Plaintiff has properly pleaded a claim under the UCL. Plaintiff alleges that Wendy's misrepresented the trans fat content

---

violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 *et seq.*" *Fremont Life Ins. Co.*, 104 Cal. App. 4th at 515 (citing *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992)). Here, Plaintiff alleges that Wendy's engaged in unlawful, unfair, and fraudulent trade practices. FAC ¶ 32. However, Plaintiff does not point to a law, violated by Defendant, as a predicate act. In her opposition to the instant motion, Plaintiff alleges that Defendant's conduct violates the False Advertising Law ("FAL") (CAL. BUS. & PROF. CODE §17500 *et seq.*) and the Consumer Legal Remedies Act ("CLRA") (CAL. CIV. CODE §1750 *et seq.*).

No allegation of violation of the FAL appears in the Complaint. The Court therefore will not consider it. Plaintiff does state a claim under the CLRA. *See* Section III.C., *infra*. Although not clearly pleaded in the Complaint, Plaintiff may use the alleged CLRA violation as a predicate act for her UCL claim. *Cruz v. Pac. Health Care Sys., Inc.*, 66 P.3d 1157, 1182 (2003).

of its foods in a "nationwide marketing campaign." *Id.* ¶ 34. Absent Wendy's representations of the negligible trans fat content in its food, Plaintiff would not have purchased Wendy's food at a premium price nor would she have consumed it. *Id.* ¶ 36. Even after reading the disclaimer on Wendy's nutritional display, a reasonable consumer would be likely to be deceived because the disclaimer is broadly stated and does not mention trans fat. Def.'s Ex. 1. Plaintiff thus has alleged facts sufficient to support a finding that she found, and a reasonable consumer could find, misleading Wendy's affirmative statements that its fried foods contain zero grams or no more than 0.5 gram of trans fat. Accordingly, Defendant's motion to dismiss this cause of action is denied.

C.  Second Cause of Action: Consumer Legal Remedies Act, Cal. Civ. Code §1750

California's Consumer Legal Remedies Act (CLRA) prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." CAL. CIV. CODE §1770(a). CLRA makes myriad practices illegal, including representing "that goods or services have . . . characteristics, ingredients, uses, benefits, or qualities which they do not have" and "advertising goods or service with intent not to sell them as advertised." *Id.* §1770(a)(5) & (9). A consumer "who suffers any damage" as a result of one of the acts specified as unlawful under Section 1770 may assert a claim for violation of the CLRA and seek actual damages, injunctive relief, restitution, punitive damages, and other relief the court deems proper. *Id.* §1780(a).

Defendant maintains that Plaintiff's CLRA claim must fail alongside her UCL claim. For the same reasons stated above with respect to Plaintiff's UCL claim, she has sufficiently alleged that she was damaged by Defendant's misrepresentation of the trans fat content of its fried foods. Accordingly, Defendant's request to dismiss this cause of action is denied.

D.  Third Cause of Action: Fraud, Deceit and/or Misrepresentation

9

Under California law, fraudulent misrepresentation requires that: (1) the defendant made a representation as to a past or existing material fact; (2) the representation was false; (3) the defendant knew the representation was false when made; (4) the defendant made the representation with the purpose of inducing the plaintiff to rely on it; (5) the plaintiff was unaware of the falsity of the representation and acted on the truth of the representation; and (6) as a result of relying on the representation, the plaintiff sustained damages. *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1156 n.3 (9th Cir. 2000). Federal Rule of Civil Procedure 9(b) requires that averments of fraud be pleaded with particularity.

Here, Plaintiff's FAC sets forth the following: (1) starting on June 8, 2006, Wendy's made claims that its fried foods would henceforth contain only negligible amounts of trans fat (FAC ¶¶ 14-16, 55); (2) Wendy's did not in fact reduce its trans fat content to negligible levels (FAC ¶¶ 17-20); (3) by November 2006, Wendy's knew the trans fat levels in its fried foods exceeded those advertised (FAC ¶ 17, Def.'s Ex. 2); (4) Wendy's intended to induce the public to prefer its products based on their low trans fat content (FAC ¶¶ 3, 12-14); (5) Plaintiff purchased Wendy's fried food, but would not have done so if she had known the representations of the low trans fat content were untrue (FAC ¶¶ 7, 56-57); and (6) Plaintiff suffered damages (FAC ¶ 61). Accordingly, Plaintiff has sufficiently pleaded "the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Accordingly, Defendant's motion to dismiss Plaintiff's third cause of action is denied.

E.  Fourth Cause of Action:  Breach of Implied in Fact Contract

Plaintiff alleges that she and Wendy's entered into an implied-in-fact contract for the sale of french fries. This contract incorporated the terms of Wendy's advertising: Plaintiff would pay for french fries free of trans fats. Wendy's allegedly breached this contract when it sold Plaintiff french fries with levels of trans fat higher than that advertised.

10

Plaintiff has not sufficiently pleaded a cause of action for breach of an implied-in-fact contract. Under California law, to plead a cause of action for breach of contract, the plaintiff must allege: (1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) breach by the defendant, and (4) damages to plaintiff. *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989). Where, as here, the complaint alleges the existence of a contract implied in fact, the plaintiff must plead the contract's legal effect, meaning formation of the contract and its substance. 4 WITKIN CAL. PROC. PLEADING §481 (4th ed. 1996); *Youngman v. Nev. Irrigation Dist.*, 70 Cal. 2d 240, 247 (1969) (stating that, in a cause of action for breach of a contract implied in fact, "only the facts from which the promise is implied must be alleged.")

Here, Plaintiff argues two theories under which a contract was formed and then breached by Wendy's. Plaintiff first alleges that Wendy's labeling, advertising, and marketing of its food free of trans fat constituted an offer capable of acceptance. FAC ¶ 65. Plaintiff then accepted this offer by purchasing Wendy's fried foods. *Id.* ¶¶ 66-67. In the alternative, Plaintiff argues that Wendy's labeling, advertising, and marketing of its fried foods were invitations to the public to make an offer to purchase the advertised trans fat free foods. (*Id.* ¶ 68.) Plaintiff made an offer to purchase by going to Wendy's and tendering payment. (*Id.* ¶ 69.) Wendy's allegedly accepted Plaintiff's offer by taking her money in exchange for its fried food. (*Id.* ¶ 70). According to this theory, Wendy's implicitly accepted the term that the foods would be free of trans fat, as advertised. (*Id.*)

Except in limited circumstances not present here, advertisements do not constitute offers, but merely invitations to deal. *See Harris v. Time*, 191 Cal. App. 3d 449, 455 (1987) (noting the general rule that advertisements are invitations to deal, not offers). Therefore, Plaintiff's first theory of contract formation fails. Plaintiff's second theory of contract formation is, in effect, a proposal to create a new species of implied warranty. Under this theory, every time a mass-marketed product

11

varies from its advertised condition, the purchaser would have an action for breach of contract. As Plaintiff's own complaint demonstrates, consumers in this position have adequate avenues of remedy via actions for fraud and under state consumer protection laws. Plaintiff's second theory of contract formation also fails. Accordingly, Plaintiff's cause of action for breach of contract is dismissed with prejudice.

F.  Fifth Cause of Action:  Unjust Enrichment

In California, "there is no action for unjust enrichment." *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003). Unjust enrichment is not a cause of action but rather "a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006) (citing 1 WITKIN, SUMMARY OF CAL. LAW, CONTRACTS §§ 1015, 1016 (10th ed. 2005)); *see also Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996) ("Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another.") Here, Plaintiff has pleaded "unjust enrichment" as an independent cause of action. As such, Plaintiff has failed to plead a recognized cause of action. Accordingly, Plaintiff's cause of action for unjust enrichment is dismissed with prejudice.

F.  Sixth Cause of Action:  Strict Product Liability

Plaintiff alleges that starting in June 2006, Defendant had a duty to warn its customers about the presence of trans fat in its fried foods. Plaintiff claims that by reporting a lower amount of trans fat than that actually contained in its food, Defendant breached this duty to warn. California law does not support Plaintiff's strict liability theory of recovery.

Comment (j) to the Restatement (Second) of Torts §402(A) explains that there is no duty to warn when the "products, or ingredients in them, . . . are only dangerous, or potentially so, when consumed in excessive quantities, or over a long period of time, when the danger, or potentiality of danger, is generally known and

recognized." As an example, the Restatement specifically cites "foods containing saturated fats, which may over a period of time have a deleterious effect on the human heart." REST. 2D OF TORTS §402A, comment j.

In keeping with the Restatement, the California Supreme Court laid out a set of rules for food-related injuries in restaurants:

> If the injury-producing substance is natural to the preparation of the food served, it can be said that it was reasonably expected by its very nature and the food cannot be determined unfit or defective. A plaintiff in such a case has no cause of action in strict liability or implied warranty. If, however, the presence of the natural substance is due to a restaurateur's failure to exercise due care in food preparation, the injured patron may sue under a negligence theory.

*Mexicali Rose v. Superior Court*, 1 Cal. 4th 617, 633 (1992). The Court held that only when a foreign object is found in food served in a restaurant may a consumer state a cause of action for strict liability. *Id.*

Here, Plaintiff consumed food with a greater level of trans fat than advertised (but, admittedly, significantly lower than previous levels). FAC ¶ 11; Center for Science in the Public Interest, Press Release, "Burger King and Wendy's Fries Flunk Trans Fat Test in New York City," Def.'s Ex. 4. The Complaint indicates that while trans fats have long been used in fast food, new evidence indicates that such fats are even more unhealthful than previously understood. FAC ¶¶ 9-11. While Plaintiff alleges that no amount of trans fat is safe to consume, the *Consumer Reports* article which Plaintiff cites for this proposition also acknowledges that "[o]ther nutrition experts recommend limiting combined intake of trans and saturated fat to no more than 10 percent of your total caloric intake, or about 20 grams on a standard 2,000-calorie diet." Def.'s Ex. 2. Therefore, under §402A, comment j, Defendant had no duty to warn of the presence of trans fat. Under *Mexicali Rose*, it is clear that absent the presence of an injury-causing foreign substance in restaurant food, a cause of action for strict liability will not lie. Accordingly, Plaintiff's sixth cause of action

is dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.

The Court hereby dismisses with prejudice Plaintiff's claims for breach of contract, unjust enrichment, and strict product liability. Defendants must answer the Complaint no later than twenty days from the date of this Order.

**IT IS SO ORDERED.**

Dated: December 5, 2007

_____
FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT