MICHAEL R. REESE (State Bar No. 206773)
michael@reeserichman.com
**REESE RICHMAN LLP**
875 Sixth Avenue, 18th Floor
New York, New York 10001
Telephone:  (212) 579-4625
Facsimile:   (212) 253-4272

*Attorneys for Plaintiff*

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOKHYUN YOO, on behalf of herself, and those similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>WENDY'S INTERNATIONAL, INC.<br><br>      Defendant. | CASE NO.  CV07-4515 FMC (JCx)<br><br>Hon. Florence-Marie Cooper<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT; FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES TO CLASS COUNSEL; AND PAYMENT TO CLASS REPRESENTATIVES AS COMPENSATION**<br><br>Hearing Date: March 9, 2009<br>Time:    10:00 a.m.<br>Place:   Courtroom 750<br>Compl. Filed: July 12, 2007 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION..................................................................................1

II.    SUMMARY OF PLAINTIFFS' CLAIMS.......................................2

III.   THE SETTLEMENT...........................................................................2

IV.   CLASS CERTIFICATION..................................................................3

V.     ARGUMENT........................................................................................4

    A. The Notice Given is Proper and Satisfies Fed. Civ. P. 23..................4

    B. The Settlement Should be Approved....................................................5

       1. Summary of the Settlement Terms…………….........................7

       2. The Settlement Terms are Fundamentally Fair, Adequate and

          Reasonable............................................................................7

           A. The strength of Plaintiff's case...........................................8

           B. The risks, expense, complexity and likely duration of further

              litigation.........................................................................8

           C. Maintaining class action status throughout the trial.............9

           D. The terms of settlement......................................................9

           E. Extent of discovery completed and stage of the proceedings.............10

           F. The experience and views of counsel...................................10

           G. The presence of a governmental participant.......................10

           H. The reaction of the class members to the proposed settlement..........10

       3. PLAINTIFFS COUNSEL IS ENTITLED TO THE REQUESTED

          AWARD OF ATTORNEYS' FEES AND EXPENSES...........................11

          A. The Lodestar/Multiplier Methodology.................................11

            1. Other Factors Supporting the Requested Award of Attorney

             Fees Under the Lodestar/Multiplier Methodology......................13

               (a) Negotiated Fee Agreements Paid By a Defendant

                 Rather than from a Limited Fund Provide the

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Maximum Benefit to the Class and Are Regularly
Encouraged and Approved by Courts.................................13

(b) The Complexity, Magnitude and Risks of the Action
and the Contingent Nature of the Fee..................................14

(c) The Result Achieved and the Quality of Representation......15

B.  The Fee is Also Reasonable Under the Common Fund Analysis……16

4. THE COURT SHOULD AWARD THE CLASS
REPRESENTATIVES $10, 000 AS COMPENSATION FOR THEIR
TIME AND EFFORTS...............................................................17

VI. CONCLUSION........................................................................18

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                **Page**

*Am. Online, Inc. v. Super. Ct.*, 90 Cal. App. 4th 1 (Ct. App. 2001)............9

*Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996)...............15

*In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608
    (N.D. Cal. Sept. 6, 1991)..........................15

*In re Arizona Escrow Fee Antitrust Litigation*, 80-840A PHX, 1982 U.S. Dist. LEXIS
    17079 (D. Arizona 1982).........................12

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)........................15

*Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589 (E.D. Cal. 1999).......................9

*Behrens v. Wometco Enters. Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) *aff'd*,
    899 F.2d 21 (11th Cir. 1990)...........................15

*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D. Ohio), *aff'd*,
    102 F.3d 777 (6th Cir. 1996)...........................13

*California v. Levi Strauss & Co.*, 715 P.2d 564 (Cal. 1986).........................9

*Cantor v. Detroit Edison Co.*, 86 F.R.D. 752 (E.D. Mich. 1980).......................12

*In re Computron Software, Inc.*, 6 F. Supp. 2d 313 (D.N.J. 1998)...............16

*In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992)..................14

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995), *cert. denied*,
    517 U.S. 1156 (1996).............................13

*EEOC v. McDonnell Douglas Corp.*, 894 F.Supp. 1329 (E.D. Mo. 1995)....................11

*Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997)..............................14

*Evans v. Jeff D.*, 475 U.S. 717 (1986)................................13

*Handschu v. Special Servs. Div.*, 787 F.2d 828 (2d Cir. 1986)....................4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..................5,6,7,9,15,16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)................................13,15

*In re Heritage Bond Litig.*, MDL CASE NO.: 02-ML-1475 DT,

2005 U.S. Dist. LEXIS 13555 (N.D. Cal. 2005)...............................................17

*Jackson v. Waller Indep. Sch. Dist.*, H-07-3086, 2008 U.S. Dist. LEXIS 22923

( S.D. Tex. Mar. 24, 2008) .............................................................................4

*Linder v. Thrifty Oil Co.*, 2 P.3d 27 (Cal. 2000)..............................................9

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)............................4

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).....................6

*Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997)..................................14

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993).....................................6

*In re Vivendi Universal, S.A.,* 242 F.R.D. 76 (S.D.N.Y. 2007).........................................4

*In Re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3rd Cir. 2004) ..........................4

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970)

*aff'd*, 440 F.2d 1079 (2d Cir. 1997).................................................................15

*Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026 (9th Cir. 1997)........................13

**Statutes**

Fed. R. Civ. P. 23(c)(2)....................................................................................4

28 U.S.C. §1712..............................................................................................11

REESE RICHMAN LLP,  875 SIXTH AVENUE, 18ᵀᴴ FLOOR, NEW YORK, NY 10001

Plaintiffs Bokyhun Yoo, Catherine Fitch, Adam Jernow and Leah McLawrence ("Class Representatives" of "Plaintiffs") and Plaintiffs' undersigned Class Counsel, on behalf of themselves and all others similarly situated, respectfully submit this Memorandum of Points and Authorities in support of Plaintiffs' Motion for Final Approval of Settlement; For Award of Attorneys' Fees and Reimbursement Of Expenses To Class Counsel; And Payment To the Class Representatives as Compensation For Their Time Spent in Litigation.

## I.   **INTRODUCTION**

The First Amended Class Action Complaint (Dkt. 19) ("Complaint") alleges that trans-fat are a major public health risk.  The settlement of this litigation has accomplished a significant goal – Wendy's is enjoined from selling to the public French fries and fried chicken products cooked in oil containing more than 0 grams of trans fat.  Specifically, pursuant to the Stipulation of Settlement (Dkt. 67-2)("Stipulation" or "Settlement") entered between the Class Representatives and defendant Wendy's International, Inc. ("Defendant" or "Wendy's"), Defendant has agreed to the revision of its fried cooking process as described in detail below.  Moreover, Defendant has agreed to pay for and subject itself to independent monitoring to assure compliance with the transition to cooking oil containing 0 grams trans fat.  Finally, Defendant has agreed to pay $1.8 million to non-profit organizations that focus on public health issues related to trans-fats.

On December 18, 2008, this Court issued an order granting preliminary approval and requiring that notice be disseminated.  (Dkt. 69) ("December 18th Order").  The Parties have complied with the Order.  Accordingly, for the reasons stated below, the Class Representatives respectfully request that this Court now enter the proposed order granting final approval of the settlement, payment of an award for Class Counsel's fees and expenses, and an award to the Class Representatives as compensation for their time spent in this litigation that ultimately achieved the settlement presented here.

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

## II.    SUMMARY OF PLAINTIFFS' CLAIMS

In June 2006, Wendy's International, Inc. ("Defendant" or "Wendy's") publicly announced that it was switching to a non-hydrogenated cooking oil containing 0 grams trans fat for its French fries and fried chicken products ("Wendy's Fried Food" or "Fried Food").  Plaintiff's class action complaint alleged that Defendant committed fraud and violated various consumer protection statutes because Wendy's continued to cook its Fried Food in trans-fat laden cooking oil, thereby causing Wendy's Fried Food to contain higher amounts of trans-fat than represented to the public.

## III.   THE SETTLEMENT

After more than a year and a half of vigorously contested litigation pursued in no less than three separate actions (discussed below) pending across the country, and months of negotiations facilitated by the involvement of a federal magistrate judge, the parties have reached agreement on settlement of this matter.   The settlement is an excellent result that achieves the goal that this litigation set out to accomplish:  namely, enjoin Wendy's from selling to the public French fries or fried chicken products that had been cooked in oil containing more than 0 grams of trans fat.  Pursuant to the Settlement previously filed with this Court, in order to settle the above-captioned litigation, as well as the related actions of *Jernow et al. v. Wendy's International Inc.*, case no. CV07-3971 LTS (S.D.N.Y.) ("*Jernow*") and *Fitch v. Wendy's International Inc.*, case no. 8:07-cv-02148 JDW (M.D. Fla.) ("*Fitch*"),[1] Defendant agrees to do the following: (1) eliminate trans-fat from the cooking oil[2] used at either the par-fry or fry stage for Wendy's French

---

[1] As part of the settlement in the above-captioned action, the Parties have agreed to dismissal with prejudice of the *Jernow* and *Fitch* actions upon final approval of the above-captioned action. Collectively, the plaintiffs in these actions – Adam Jernow, Leah McLawrence, Catherine Fitch and Bokhyun Yoo are represented by the same counsel, and all are in agreement with the proposed settlement.

[2] The cooking oil will contain a level of trans fat per serving that, pursuant to the regulations then in force and promulgated by the United States Food and Drug Administration, can be represented as 0 grams of trans-fat.

fries and fried chicken products at a cost of approximately $2.2 million dollars to Wendy's; and (2) subject itself to, and pay for, independent monitoring for one year after final approval of the Settlement to assure that the transition to 0 grams trans-fat cooking oil has occurred. Furthermore, pursuant to the terms of the Settlement, Defendant agrees to pay $1.8 million dollars to non-profit organizations that focus on public health issues related to the consumption of trans-fat, *i.e.* the American Heart Association; the American Diabetes Association; the American Dietetic Association and the American Cancer Society. Accordingly, the settlement is an excellent result, promoting the interests of class members and the public health at large.

Not surprisingly, given the excellent results of the settlement, the Settlement enjoys the overwhelming support of the Class, as only two Class Members have chosen to opt-out of the Class, and not a single objection to the Settlement terms has been lodged as of the filing date of this Motion.[3] *See* Declaration of Michael R. Reese in Support of Motion for Final Approval ("Reese Decl.") Exhibit A. The total benefit, whether measured in the dollars spent by Defendant pursuant to the terms of the settlement or the great benefit to the public effected by Wendy's Fried Food being required to be cooked in oil containing 0 grams trans fat represents a settlement that surpasses all criteria for fairness, reasonable and adequacy under applicable standard.

## IV.   CLASS CERTIFICATION

In accordance with the terms of the Settlement, the parties have agreed, and the Court has entered an Order that for purposes of settlement only, this Action shall be conditionally certified as a class action with the Named Plaintiffs as class representatives, on behalf of a class consisting of all purchasers in the United States of

---

[3] The final date for lodging a timely objection is February 16, 2009. If Class Counsel receives any objections or opt-outs within the week between the filing of this Motion and the objection deadline, Class Counsel will bring them to the Court's attention.

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

1    Wendy's French fries or fried chicken products during the period of June 8, 2006 to
2    December 17, 2008 (the "Class").

3    **V.    ARGUMENT**

4        **A.    The Notice Given is Proper and Satisfies Fed. R. Civ. P. 23**

5        The threshold requirement concerning class notice is whether the means employed
6    to distribute the notice is reasonably calculated to apprise the class of the pendency of the
7    action of the Settlement, and of the class members' right to opt out or object.  The notice
8    must be the "best notice that is practicable under the circumstances."  Fed. R. Civ. P.
9    23(c)(2); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  In
10   class actions where the names and locations of individual class members is near
11   impossible, if not impossible, to determine, "the court may direct appropriate notice to
12   the class and individual notice is not constitutionally required." *See Jackson v. Waller*
13   *Indep. Sch. Dist.*, H-07-3086, 2008 U.S. Dist. LEXIS 22923, *28 ( S.D. Tex. Mar. 24,
14   2008) (citing Fed. R. Civ. P. 23(c)(2)(A)).  In such situations, courts consistently have
15   found publication notice for such class actions to be constitutionally sufficient. *See, e.g.,*
16   *In Re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3rd Cir. 2004) (holding that
17   the district court acted within its discretion in finding that "the best notice practicable"
18   under the circumstances was publication notice); *Handschu v. Special Servs. Div.*, 787
19   F.2d 828 (2d Cir. 1986)  ("Likewise, the method chosen to disseminate the notice--
20   publication over a period of weeks in several metropolitan New York newspapers--
21   adequately served to notify class members that a potential compromise had been reached.
22   Because of the common interests of all its members, a Rule 23(b)(2) class seeking
23   declaratory and injunctive relief is cohesive by nature"); *In re Vivendi Universal, S.A.,*
24   242 F.R.D. 76, 107-08 (S.D.N.Y. 2007) ("[W]hen class members' names and addresses
25   may not be ascertained by reasonable effort, publication notice has been deemed
26   adequate to satisfy due process").

27       Here, individual notice was not practicable as there were no readily or reasonable
28   means to determine the names and places of residence of class members because the

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

1   transactions for Wendy's Fried Food at issue in the litigation occurred through cash
2   transactions without record of the purchasers' names or residences.  Accordingly, the
3   "best notice that is practicable under the circumstances" of this case was publication
4   notice.  Pursuant to the Stipulation and this Court's December 18th Order Wendy's has
5   published notice in the national edition of USA Today on two separate occasions,
6   namely, January 14, 2009 and January 15, 2009.  *See* Reese Decl. Ex. B.  USA Today is
7   the largest newspaper in the United States, with a daily circulation of more than 2.2
8   million    readers.    *See*    *http://www.editorandpublisher.com/eandp/news/*
9   *article_display.jsp?vnu_content_ id=1003878040* (stating USA Today is the top-selling
10  newspaper for the period ending September 30, 2008, with an average daily circulation
11  of  2.293 million readers).  Additionally, pursuant to the Stipulation and this Court's
12  December 18th Order, both  Wendy's and Class Counsel have posted notice on the
13  internet.  Reese Decl. Ex. C.  Recent studies have shown that the vast majority of
14  Americans log on the Internet on a daily basis, and obtain news and other information
15  from the Internet.  *See e.g. http://www.pewinternet.org/trends /user_Demo_2.15.08.htm*
16  (report by the Pew Internet Project stating that 92% of adults between 18-29 use the
17  Internet).

18      Combined, the USA Today and Internet sources of notice were calculated to reach
19  the largest number of class members possible and is therefore "the best notice
20  practicable."  Accordingly, the notice given is proper and satisfies the requirements of
21  Federal Civil Procedure Rule 23.

22      **B.**    **The Settlement Should be Approved**

23      Rule 23(e) of the Federal Rules of Civil Procedure states in pertinent part: "A class
24  action shall not be dismissed or compromised without the approval of the court."  Rule
25  23(e) therefore "requires the district court to determine whether a proposed settlement is
26  fundamentally fair, adequate, and reasonable."  *Hanlon v. Chrysler Corp.*, 150 F.3d
27  1011, 1026 (9th Cir. 1998).  Relevant factors to be balanced in this determination are:

28

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through out the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.  However, the Ninth Circuit also has indicated that the above "list is not exclusive and different factors may predominate in different factual contexts," *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), and "the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case" will dictate which factors are examined most closely by the court.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Furthermore:

> the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court [the Ninth Circuit] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Id.*  This is so because "it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution."  *Id.*  Finally, "[s]ettlement is the offspring of compromise; the question [a court addresses in reviewing a proposed class settlement] is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

### 1.   Summary of Settlement Terms

Pursuant to the Settlement entered into by the Parties, Defendant agrees to the following: (1) eliminate trans-fat from the cooking oil[4] used at either the par-fry or fry stage for Wendy's French fries and fried chicken products at a cost of approximately $2.2 million dollars to Wendy's; (2) pay for and subject itself to independent monitoring for a year to assure compliance with item number 1 above; (3) pay $1.8 million to non-profit organizations that focus on public health issues, *i.e.* the American Heart Association; the American Diabetes Association; the American Dietetic Association and the American Cancer Society; (4) payment of cost of notice of the Settlement; (5) payment of $1,090,000 (plus interest) in attorneys' fees and costs to Class Counsel; and (6) upon approval of the Court, make a single payment of $10,000 to the Named Plaintiffs to cover the time, costs and expenses personally incurred by them through their representation of the class.[5]

In exchange for the foregoing, Wendy's will receive a General Release from each Settlement Class member of all claims arising from the purchase of Wendy's Fried Food that are or could have been asserted in the Trans Fat Litigation, with the exception of personal injury claims.

### 2.   The Settlement Terms Are Fundamentally Fair, Adequate and Reasonable

Class Counsel have substantial experience in class action litigation, specializing in consumer fraud class action litigation.  In their view, the Settlement at this juncture is

---

[4] The cooking oil will contain a level of trans fat per serving that, pursuant to the regulations then in force and promulgated by the United States Food and Drug Administration, can be represented as 0 grams of trans-fat.

[5] The $10,000 shall be split among the Class Representatives as follows: Adam Jernow - $3500; Leah McLawrence - $3500; Bokhyun Yoo - $1500; Catherine Fitch - $1500. The different amounts between the Class Representatives reflects the fact that Mr. Jernow and Ms. McLawrence expended more time on the matter given that they sat for their depositions, whereas Ms. Yoo and Ms. Fitch did not.

fundamentally fair, adequate and reasonable when analyzed against the Ninth Circuit criteria set out in *Hanlon* that is discussed below:

### A.   The strength of Plaintiffs' case

Although Class Counsel's opinion is that this case is a strong one, it must be noted that Defendant denies the allegations in their entirety and has vigorously contested the merits of the case throughout this litigation.

### B.   The risks, expense, complexity
### and likely duration of further litigation

Should the Settlement not be approved, further litigation would result over class certification, anticipated summary judgment motions, and anticipated expert testimony. Any such decision reached on these issues would probably lead to an appeal. While the continuation of the litigation in this matter would not likely result in an increased benefit to the Settlement Class, it would lead to a substantial expenditure in costs by both Parties. This is so for three reasons.

First, should this matter proceed and Plaintiffs prevail at a trial, Defendant will no doubt appeal to the Ninth Circuit resulting in further burden, expense, and delay to the parties.

Second, the chief goal of Plaintiffs' actions was to enjoin Defendant from selling French fries or fried chicken products to the public that had been cooked in oil containing more than 0 grams of trans fat. The Settlement achieves this significant goal. The Settlement Class is unlikely to receive any additional injunctive relief after a full trial which will exceed the benefits provided for in the Settlement.

Third, Plaintiffs' actions have resulted in Defendant agreeing to pay $1.8 million to non-profit organizations that focus on public health issues associated with trans-fats. This additional benefit is likely unavailable if Plaintiffs were to proceed with this case to trial and prevail. Accordingly, it should be given consideration by the Court in weighing the benefits of the proposed compromise of the Parties.

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

### C.   <u>Maintaining class action status throughout the trial</u>

Plaintiffs submit that this action is properly maintained as a class action as the numerosity, commonality, typicality and adequacy of representation requirements, under Rule 23(a), are met.  Further, Rule 23(b)(3) is also satisfied because "'[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).  This conclusion is supported by the numerous cases in which classes were certified involving claims of consumer fraud.  *See, e.g., California v. Levi Strauss & Co.*, 715 P.2d 564, 570 (Cal. 1986); *see also, Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("Class action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'") (citation omitted); *Linder v. Thrifty Oil Co.*, 2 P.3d 27, 30 (Cal. 2000) ("Courts long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system"); *Am. Online, Inc. v. Super. Ct.*, 90 Cal. App. 4th 1, 17 (Ct. App. 2001) ("[T]he right to seek class action relief in consumer cases has been extolled by California courts").

In light of the foregoing, Plaintiffs are confident that this action can be maintained as a class action throughout trial.  Wendy's is prepared to contest class certification if the Settlement is not approved and specifically reserves the right to do so.

### D.   <u>The terms of settlement</u>

As explained above, the terms of the Settlement fulfill Plaintiffs' significant objective of enjoining Wendy's from cooking its French fries and chicken products in cooking oil that contains more than 0 grams of trans fat.  The Settlement achieves this significant goal through Wendy's transition to cooking oil at the par-fry and in-store frying stages that contains 0 grams of trans fat.  Additionally, this injunctive relief will be assured through the year long independent monitoring that Wendy's has agreed to and

1  will pay for.  In addition, Wendy's has agreed to pay $1.8 million to non-profit

2  organizations that focus on public health issues.  Accordingly, the class, as well as

3  society at large, will benefit by this action having been brought.

### E.    Extent of discovery completed
### and stage of the proceedings

6      This case has involved extensive discovery, with production of over 150,000

7  pages of documents from Defendant and third parties, requests for admission;

8  interrogatories; and, numerous depositions.  Based upon Class Counsel's review of this

9  discovery, and resulting in-depth knowledge of the facts and issues of the case, Class

10 Counsel believe that the Settlement is fair, adequate and reasonable.

### F.    The experience and views of counsel

12     Class Counsel have participated in numerous class actions involving allegations of

13 consumer fraud.  Class Counsel feels that the Settlement is fair, adequate and reasonable

14 in light of the significant relief achieved by the Settlement whereby Defendant agrees to

15 transition to cooking oil that contains 0 grams of trans fat; Defendant subjecting itself to,

16 and paying for, one year of independent monitoring to assure that the transition to 0

17 grams trans-fat cooking oil has occurred; the additional $1.8 million payment to be made

18 by the Defendant to non-profit organizations that focus on public health issues; and the

19 cost and expense of class notification being paid by the Defendant.

### G.    The presence of a governmental participant

21 This factor is not applicable to this case.

### H.    The reaction of the class members
### to the proposed settlement

24     To date, the reaction of class members has been extremely supportive of the

25 settlement.  While the deadline to opt-out or object has not expired as it is set for

26 February 16, 2009, to date only two persons have opted out of the settlement as of the

27 filing date of this Motion.

28

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

### 3.  PLAINTIFFS COUNSEL IS ENTITLED TO THE REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES

Wendy's has agreed to pay Plaintiffs' Counsel $1,090,000 for its work performed in this matter.[6]  This amount of fees is very reasonable given the amount of work performed litigating this action (and the related *Jernow* and *Fitch* actions) on behalf of the Class Representatives and the Class as well as the value of the settlement.  Class Counsel therefore submit that the fee requested is reasonable under either the lodestar/multiplier or common fund methodology used for determining reasonableness of attorneys' fees.

### A.  The Lodestar/Multiplier Methodology

One method available to the Court to determine the reasonableness of fees is for the Court to examine the lodestar (defined as hourly rate times number of hours expended on the litigation) of the attorneys who represented the plaintiff class and determine whether a multiplier that takes into account the risk of the litigation, as well as other factors, should be applied to the lodestar.  This is commonly referred to as the "lodestar/multiplier methodology".

The Class Action Fairness Act that grants this Court jurisdiction over the claims presented here specifically envisions that a lodestar/multiplier analysis can be used in matters where injunctive relief is the primary remedy.  *See* 28 U.S.C. §1712(b)(2) and (c) ("Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including

---

[6] Significantly, the Parties did not negotiate attorneys' fees until agreement had been reached on the material terms of the settlement.  The separate nature of the negotiations demonstrate that this fee was not "traded off" for a lesser settlement.  Moreover, there is no reason to second-guess whether Defendant, a sophisticated institution with experienced and competent counsel, may have underpaid or overpaid in negotiating its maximum exposure to fees and expenses.  *See EEOC v. McDonnell Douglas Corp.*, 894 F.Supp. 1329, 1334 (E.D. Mo. 1995) ("When, as in the instant case, there is no evidence of fraud, collusion, overreaching or unreasonableness by the parties, a court should not intrude upon the settlement in question, particularly where it has been achieved through extended negotiations, carefully selected criteria and complex calculations").

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees"); *see also In re Arizona Escrow Fee Antitrust Litigation*, case no. 80-840A PHX, 1982 U.S. Dist. LEXIS 17079, *17 (D. Arizona 1982)(using lodestar/multiplier analysis to award fee in injunctive relief settlement); *Cantor v. Detroit Edison Co.*, 86 F.R.D. 752, 757-58 (E.D. Mich. 1980) (lodestar-multiplier approach used to calculate attorney fees where injunctive but not monetary relief obtained).

Under a lodestar/multiplier methodology, the reasonableness of the fee here is evident. In total, Class Counsel, have expended more than $955,000 in lodestar on this matter and more than $15,800 in expenses. Reese Decl. Exs. D and E. This lodestar reflects the tremendous amount of work expended by Class Counsel over a year and a half to litigate three separate actions against Defendant. It reflects the resources expended to extensively investigate the claims prior to filing, including work with experts who tested Wendy's food for trans-fat; review of medical journals on the harms of trans-fat; as well as review of the current state of consumer protection laws in various jurisdictions.

It also reflects that the litigation was hard-fought by Defendant on all fronts. Defendant filed no less than three motions to dismiss in the various actions, all of which Class Counsel opposed. It also reflects that no less than 150,000 pages of documents were reviewed by Class Counsel, produced from Defendant and third parties alike, and that many of the documents were of a highly technical nature; and, that a number of depositions were conducted, both of the Defendant and of the Class Representatives. It also reflects the work of Class Counsel on two voluminous memoranda of law filed in support of motions for class certification (filed in both the above-captioned action and the *Jernow* action).

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

1.  **Other Factors Supporting the Requested Award of Attorney
    Fees Under the Lodestar/Multiplier Methodology**

The following additional factors under the lodestar/multiplier methodology underscore the reasonableness of the requested fee Defendant has agreed to pay.

    a.  **Negotiated Fee Agreements Paid By a Defendant Rather
than from a Limited Fund Provide the Maximum
Benefit to the Class and Are Regularly Encouraged and
Approved by Courts**

Negotiated fee agreements between plaintiffs and defendants in consumer class actions can provide a greater benefit to the class than payment from a limited fund and are encouraged, particularly where, as here, the attorneys' fees are negotiated separately from the settlement and after all terms of the settlement on behalf of the class have been agreed to by the parties. *See, e.g., Evans v. Jeff D.*, 475 U.S. 717, 734-38 n.30 (1986) (indicating that parties may negotiate fees as well as settlement); *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997) ("parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees").

Moreover, unlike a typical limited fund case, the fee amount here ***will not*** affect the settlement benefit.  A decision to reduce or even to refuse to award a fee, while beneficial to Defendant, will not result in any additional benefit to the Class. *See DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1178 (8th Cir. 1995), *cert. denied*, 517 U.S. 1156 (1996) (approving award of attorneys' fees where "[t]he vast majority of the fee will be paid by [the defendant] and will not come out of any class recovery").  Nor does a negotiated fee present the potential for adversity between counsel and the class that the traditional common fund fee may present, because the negotiated fee is being paid in addition to the class benefit. *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1277-78 (S.D. Ohio), *aff'd*, 102 F.3d 777 (6th Cir. 1996) (recognizing that divergence of interest can arise in traditional common fund situations).  Accordingly, courts at all levels of the

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

1  judicial system have endorsed such negotiated fee and expense awards.

2      In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the United States Supreme

3  Court held that negotiated, agreed-upon attorneys' fee provisions are the "ideal" toward

4  which the parties should strive.  "A request for attorneys' fees should not result in a

5  second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *In*

6  *re Continental Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best

7  known by the negotiating parties themselves, should determine the quantum of the

8  attorneys' fee).

9                      **b.  The Complexity, Magnitude and Risks of the Action**

10                          **and the Contingent Nature of the Fee**

11  From the commencement of this litigation, Plaintiffs' Counsel have been paid nothing

12  for their substantial efforts.  (Reese Dec. at ¶22.)  The significant outlay of cash and

13  personnel resources by Class Counsel has been completely at risk.  Payment for their

14  services was wholly dependent on obtaining some benefit for the Class.  As discussed

15  above, there was a significant possibility that Class Counsel would recover nothing more

16  for their substantial efforts.  *See In re Union Carbide*, 724 F. Supp. 160, 164 (S.D.N.Y.

17  1989)("[C]ontingent fee risk is the single most important factor in awarding a

18  multiplier"); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y.

19  1985)("Numerous cases have recognized that the attorneys' contingent fee risk is an

20  important factor in determining the fee award.").

21      Courts have recognized that the risk of non-payment in complex cases, such as the

22  case at bar, is very real and is heightened when plaintiffs' counsel press to achieve the

23  very best result for those they represent.  There are numerous class actions in which

24  plaintiffs' counsel expended thousands of hours and yet received no remuneration

25  whatsoever despite their diligence and expertise.  *See, e.g., Robbins v. Koger Props.,*

26  *Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an

27  accounting firm reversed on appeal on loss causation grounds and judgment entered for

28  defendant); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (Seventh Circuit

affirmed the lower Court's granting of summary judgment in favor of defendants); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, 84-cv-20148 JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (class won jury verdict against two individual defendants, but district court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and a motion for judgment n.o.v. was denied, but on appeal the judgment was reversed and the case dismissed, after 11 years of litigation); *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) (referencing two cases which went to trial — in one case plaintiffs recovered nothing and in the other they recovered less than the amount which had been offered in settlement), *aff'd*, 440 F.2d 1079 (2d Cir. 1997).

The multiplier requested here is merely 1.1. This multiplier falls well within the acceptable range on multiplier awarded by courts within the Ninth Circuit. *See e.g. Bellows v. NCO Fin. Sys., Inc.*, 07-cv-1413 W, 2009 U.S. Dist. LEXIS 273, *5 (S.D. Cal. Jan. 5, 2009)(awarding multiplier of 1.7); *Martin v. FedEx Ground Package Sys.*, case no. 06-cv-6883 VRW, 2008 U.S. Dist. LEXIS 106524, *20 (N.D. Cal. Dec. 31, 2008) ("Because the lodestar cross check revealed a relatively low multiplier of 1.48, the court is satisfied that counsel's requested fee award is not unreasonable"); *Craft v. County of San Bernardino*, case no. 05-cv-00359 SGL, 2008 U.S. Dist. LEXIS 27526 (C.D. Cal. Apr. 1, 2008)(awarding multiplier of 5.2 and stating that "While this is a high end multiplier, there is ample authority for such awards resulting in multipliers in this range or higher.").

Here, taking into account the significant complexity of the issues, the magnitude of the action, and the risks of this litigation and contingent nature of the fee, a multiplier of 1.1 is certainly reasonable.

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

c. **The Result Achieved and the Quality of Representation.**

The result achieved and the quality of the services provided are also important factors to be considered in determining the amount of reasonable attorneys' fees under a lodestar/multiplier analysis. *See, e.g., Hensley*, 461 U.S. at 436 ("[M]ost critical factor is the degree of success obtained"); *Behrens v. Wometco Enters. Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained"), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *In re Warner*, 618 F. Supp. at 748-49. Here, the quality of the representation of Class Counsel is best evidenced by the excellent benefit achieved here that will significantly reduce a major public health.

Moreover, this benefit came in the face of formidable opposition who vigorously defended this and the related *Jernow* and *Fitch* actions at every stage of the litigation. Defendant was represented by highly-skilled counsel throughout this litigation. That Class Counsel were able to obtain a substantial settlement of the action from Defendant is additional confirmation of the quality of their representation in this matter, and is another important factor for the Court to consider in determining the reasonableness of Class Counsel's fee request. *See, e.g., In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998).

B. **The Fee is Also Reasonable Using a Common Fund Analysis**

An alternative method available to this Court to determine a reasonable fee is through the common fund analysis. *See Hanlon*, 150 F.3d at 1029. With respect to value of an injunctive relief settlement, as stated above, the settlement of this action results in a notable achievement – a requirement that Wendy's use cooking oil containing 0 grams trans-fat, thereby providing great benefit to the public. While on the one hand the value of the settlement is immeasurable because the great protection it provides to the public and its health (which arguably is invaluable), on the other hand, an actual dollar amount can easily be determined. Specifically, Wendy's expended approximately $2.2 million to effectuate the transition to 0 grams trans-fat cooking oil. Additionally,

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

Wendy's will pay $1.8 million dollars to non-profit organizations that focus on health issues related to the consumption of trans-fat.  Wendy's also has agreed to bear the cost of the independent monitor, who shall test Wendy's Fried Food on a quarterly basis for a year from seven Wendy's restaurants chosen at random.  The total cost associated with the independent monitoring is $265,000. Wendy's also has borne the cost of notice in this action, at a cost of $135,000 for the publication in the USA Today and posting on the Internet. Wendy's has also agreed to pay Plaintiffs' Counsel attorneys' fees and expenses of $1,090,000 as well as, upon Court approval, $10,000 to the Named Plaintiffs as compensation for their time and efforts in serving as Class Representatives. Accordingly, in total, the value of the settlement is no less than $5,500,000.

If this Court were to use a common fund analysis, Class Counsel's fee represents 19.8% of the $5,500,000 fund.  Given that courts within the Ninth Circuit commonly allow for attorney's fees to amount to one-third ($33^{1/3}$%) of a common fund, 19.8% is well within the range of reasonableness.  *See e.g. In re Heritage Bond Litig.*, MDL CASE NO.: 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, (N.D. Cal. 2005) ("this Court finds thirty-three and one-third percent (331/3%) of the common fund of $27,783,000.00 to be a reasonable percentage award").

### 4. THE COURT SHOULD AWARD THE CLASS REPRESENTATIVES $10,000 AS COMPENSATION FOR THEIR TIME AND EFFORTS

It is well within the Court's discretion to reward named plaintiffs for their efforts in forwarding the litigation. *See e.g. Fitzgerald v. City of Los Angeles*, case no. 03-cv-01876 NM, 2003 U.S. Dist. LEXIS 27382, **9-10 (C.D. Cal. Dec. 8, 2003)(awarding named plaintiffs $3,500 each as incentive award).

Here, upon this Court's approval, Defendant Wendy's has agreed to pay the Named Plaintiffs $10,000 in total as an incentive award as compensation for their time

REESE RICHMAN LLP, 875 SIXTH AVENUE, 18TH FLOOR, NEW YORK, NY 10001

1   and effort spent in the litigation.[7]  Each of the Named Plaintiffs has spent considerable

2   time and effort in this litigation.  Moreover, Mr. Jernow and Ms. McLawrence both sat

3   for their depositions.   Accordingly, it is hereby requested that the Court approve the

4   following amounts to be paid by Defendant to the Plaintiffs: Adam Jernow - $3500; Leah

5   McLawrence - $3500; Bokhyun Yoo - $1500; and, Catherine Fitch - $1500.[8]

6   **IV.**   **CONCLUSION**

7          For the reasons stated above, Plaintiff respectfully requests that the Court enter the

8   proposed order granting final approval of the Settlement and entering Judgment; enter an

9   order awarding Class Counsel $1,090,000 plus interest that has been placed in escrow to

10  pay for Class Counsel's attorneys fees and expenses; and enter an order awarding Class

11  Representatives Jernow and McLawrence $3500 each and Yoo and Fitch $1500 each.[9]

12                                        Respectfully submitted,

13  Dated:    February 9, 2009            **REESE RICHMAN LLP**

14                                        By: */s/ Michael R. Reese*
                                          Michael R. Reese (SBN 206773)
15                                        michael@reeserichman.com
                                          875 Sixth Avenue, 18th Floor
16                                        New York, New York 10001
                                          Telephone:  (212) 579-4625
17                                        Facsimile:   (212) 253-4272

18                                        *Attorney for Plaintiffs Bokhyun Yoo,*
                                          *Catherine Fitch, Adam Jernow and*
19                                        *Leah McLawrence*

20

21

22   _____

23   [7] Significantly, the incentive award was not discussed nor negotiated until after there was agreement on the material terms of the settlement between the Parties.

24   [8] The difference in the amounts requested for the Named Plaintiffs reflects the fact that

25   Mr. Jernow and Ms. McLawrence had to expend more time than Ms. Yoo and Ms. Fitch given that they sat for their depositions, whereas Ms. Yoo and Ms. Fitch did not (as the

26   case settled before their depositions).

27   [9] A copy of the proposed Order granting Final Approval; Award of Attorneys' Fees; and, Award to the Class Representatives is attached as Exhibit F of the Reese Declaration.

28